

**FILED & ENTERED**

**AUG 24 2021**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gonzalez DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Sergio Lopez Miranda and Esmeralda Miranda,<br><br>Debtors. | Case No.:   2:13-bk-20738-ER<br>Adv. No.:   2:19-ap-01079-ER |
| Sergio Lopez Miranda and Esmeralda Miranda,<br>Plaintiffs<br>v.<br>Shellpoint Mortgage Servicing LLC,<br>Defendant | **MEMORANDUM OF DECISION FINDING THAT NATIONSTAR DID NOT RECEIVE ADEQUATE NOTICE OF PLAINTIFFS' CHAPTER 11 PLAN OF REORGANIZATION**<br><br>**EVIDENTIARY HEARING VIA ZOOM:**<br>Date:   April 21, 2021<br>Time:   10:00 a.m.<br>Location:   Ctrm. 1568<br>Roybal Federal Building<br>255 East Temple Street<br>Los Angeles, CA 90012 |

## I. Introduction

Plaintiffs Sergio Lopez Miranda and Esmeralda Miranda (the "Plaintiffs") contend that Nationstar Mortgage ("Nationstar"), the predecessor-in-interest to Defendant Shellpoint Mortgage Servicing, LLC ("Shellpoint") received adequate notice of their Chapter 11 Plan of Reorganization (the "Plan") [Bankr. Doc. No. 103] and supporting documents (the "Plan Documents") such that the Defendant is bound by the terms of the Plan. The Defendant asserts that Nationstar did not receive adequate notice of said Plan and Plan Documents and therefore Shellpoint is not bound by its terms.

The Plaintiffs' complaint contains two causes of action: 1) for breach of contract for Shellpoint's alleged violation of the Plan; and 2) declaratory relief against Shellpoint. *See* Doc. No. 1 (complaint).

The Court held an evidentiary hearing on April 21, 2021.[1] The parties filed closing briefs on July 30, 2021. *See* Doc. Nos. 99 & 100. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Civil Rule 52, made applicable to these proceedings by Bankruptcy Rule 7052.[2] For the reasons set forth below, the Court finds that the Defendant did not receive adequate notice of the Plaintiffs' Plan and is therefore not bound by its terms.

Because Shellpoint is not bound by the terms of the Plaintiffs' Plan, the Court will enter judgement in favor of Shellpoint.

## II. Findings of Fact[3]

The Plaintiffs filed a voluntary Chapter 11 petition in April 2013 (the "Petition Date"). At that time, the Plaintiffs owned rental properties located at 1118 and 1123–1123 1/2 West 119th Street in Los Angeles, California (the "1118 Property" and the "1123 Property"). Only the 1123 Property is relevant to this hearing.

As of the Petition Date, the loan on the 1123 Property was serviced by Bank of America. In April 2013, Bank of America notified the Debtors that it was transferring the servicing of the loan on the 1123 Property to Nationstar.

On June 13, 2013, the Plaintiffs' bankruptcy case was dismissed with a 180-day bar to refiling. On June 25, 2013, the Plaintiffs filed a Motion to Vacate the Dismissal, and the Court entered an order granting that motion July 19, 2013. *See* Bankr. Doc. Nos. 42, 48 & 55.

In August 2013, the Plaintiffs filed a motion to value the 1123 Property at $250,000 and served it on Bank of America but not Nationstar. No opposition was filed, and an order granting the motion was entered in October 2013. *See* Bankr. Doc. No. 98.

In late November 2013, the Plaintiffs entered into a loan modification agreement with Nationstar, which identified Nationstar as the lender. Nevertheless, Plaintiffs' proposed Plan, which was filed less than two weeks later, identified the claimant for the claim secured by the 1123 Property as "BAC Home Loans Serv LP aka Bank of America N.A." and proposed treatment differing from that specified in the loan modification.

On May 13, 2014, the Court entered an order approving the Plaintiffs' Disclosure Statement and establishing plan confirmation procedures. *See* Bankr. Doc. No. 129. On August 7, 2014, the Court entered an order confirming the Plan. *See* Bankr. Doc. No. 139.

The Bankruptcy Docket contains no proofs of service reflecting that the Disclosure Statement, the Plan, or notices of the hearings thereon were served upon Nationstar.

---

[1] A transcript of the proceedings is available as Doc. No. 97 and is cited as "Tr."

[2] Unless otherwise indicated, all "Civil Rule" references are to the Federal Rules of Civil Procedure, Rules 1–86; all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037; all "Evidence Rule" references are to the Federal Rules of Evidence, Rules 101–1103; and all statutory references are to the Bankruptcy Code, 11 U.S.C. §§101–1532.

[3] To the extent any findings of fact should more properly be characterized as conclusions of law, they shall be deemed as such. To the extent any conclusions of law should more properly be characterized as findings of fact, they shall be deemed as such.

In late 2018, Nationstar assigned the Deed of Trust on the 1123 Property to Wilmington Savings Fund Society, FSB, dba Christiana Trust, as Owner Trustee on Behalf of CSMC 2018-RPL6 Trust, and servicing of the loan was transferred to Shellpoint

On March 21, 2019, the Plaintiffs filed a complaint against Shellpoint, alleging that it had failed to comply with the terms of the Plan. On August 29, 2019, the Court entered summary judgment in favor of Shellpoint. The Court found that Shellpoint was entitled to judgment as a matter of law because Nationstar, its predecessor-in-interest, was not listed as a creditor in the Plan and therefore was not a party bound by it.

The Bankruptcy Appellate Panel (the "BAP") reversed the entry of judgment in favor of Shellpoint and remanded the matter for further proceedings. The BAP found that if Nationstar had notice of the Plan adequate to satisfy due process, it (and Shellpoint) would be bound by the Plan.

The sole purpose of the evidentiary hearing was to determine whether Nationstar received notice of the Plan and Plan Documents sufficient to bind its successor-in-interest, Shellpoint, to the Plan's terms. For the reasons explained below, the Court finds that Nationstar did not receive adequate notice of the Plaintiffs' reinstated bankruptcy case, the Plan, or the Plan Documents and is therefore not bound by the terms of the Plan.

## A. Nationstar Did Not Receive Notice of the Reinstatement of the Plaintiffs' Bankruptcy Case

Before addressing whether Nationstar received notice of the Plan and Plan Documents, the Court must first address whether Nationstar was even aware that the Plaintiffs' bankruptcy case had been dismissed and subsequently reinstated. At the Evidentiary Hearing, Sergio Miranda's daughter, Janet Miranda ("Janet"),[4] first testified. Janet stated that she had originally been in contact with Nationstar and told them about her parents' bankruptcy:

> **Question by Defendant's Counsel:** Ms. Miranda, I think you said that, but did you speak with a representative at Nationstar in 2013?
> **Answer:** If I did, it was regarding notifying them about the bankruptcy case
> **Question:** And so the bankruptcy case was filed in April 2013. So would you say it's fair to say that you probably spoke with a representative within 30 days of that date?
> **Answer:** It could have been around that time frame. It's so – it's been so many years now. . . .
> **Question:** Okay, however, shortly after that notice was provided, this bankruptcy case was dismissed on June 13th, 2013, is that correct?
> **Answer:** I'm not aware. I would need to look at my records. It's been so long.
> **Question:** Okay. The dismissal was eventually vacated. However, do you have any recollection of the dismissal or the vacating of the order of dismissal?
> **Answer:** I think I may have, yes.
> **Question:** Okay. Do you recall the law office service that order vacating the dismissal on creditors?
> **Answer:** Can't quite remember the names.

---

[4] A given name is used to distinguish Janet from her parents, Sergio and Esmeralda. No disrespect is intended.

> **Question:** Okay. So am I correct to say that since you do not recall the actual dismissal or vacating of the dismissal, that you probably don't also likely recall serving anything directly to Nationstar regarding that dismissal, correct?
> **Answer:** No. I recall serving all those documents to Nationstar.
> **Question:** Including the order dismissing the case?
> **Answer:** Not that document.
> **Question:** But the document vacating the dismissal?
> **Answer:** No.

Tr. 38:6-14 & 38:23-39:19.

In response to questioning by the Court, Janet clarified that she did not mail any notice of the vacating of the dismissal to Nationstar, despite her claiming that she "may have done so." *See* Tr. 40:4-7. The only evidence of Nationstar ever having received notice of the bankruptcy was proffered by one of the Defendant's witnesses, Simon Ward Brown ("Brown"), a principal litigation ambassador at Nationstar who testified as to Nationstar's business practices with respect to bankruptcies. Brown testified that Nationstar knew of the bankruptcy when it was initially filed, but never received notice of the reinstatement of the bankruptcy case, and that there is no notation of the reinstatement in the Communications Log (Ex. H), which contains records of all communications received by Nationstar:

> **Question by Defendant's Counsel:** Was there any record in your review that Nationstar ever received notice that this bankruptcy dismissal was vacated or the case was reinstated at any time?
> **Answer:** No, not until after the lawsuit was filed in I believe the summer of 2017.
> **Question:** Okay. According to the business records, is there any record that the lender - that Nationstar had any direct communication with the borrower's attorney or their office, the attorney's office?
> **Answer:** There were a couple of calls that were notated. I believe they were to the attorney's office. The customers provided us with their phone number, and we made several attempts to contact them, and on one occasion we were asked to call back at a later date, and all the correspondence with them was really unsuccessful with respect to finding anything out about an active bankruptcy.
> **Question:** And was this initiated calls [*sic*] and communication with Debtor's counsel and the Debtor's counsel's office after the loan modification process was completed and after the plan was confirmed?
> **Answer:** No. I believe - take a look at the exhibit here. I don't know if your exhibit is Bate stamped or not, but mine's not. So I'm actually looking at an entry on July 1st, 2013, which would be after we had this case taken out of an active bankruptcy status, that we were provided an updated phone number of (951) 656-5777. Looks like attorney contact, and customer provided us that information, and we made several attempts to contact the attorney's office after that date. For example, on July 26th, it actually says talked to other party, and it references that same phone number, and whoever answered the phone at that time requested that we call back on Monday. And then we attempted to call that same number several days later, and the individual that was contacted in that office referenced that that number appeared to be disconnected when they attempted to call that number.

> **Question:** Okay. So there appears that there was [*sic*] attempts made but no connection was actually successful, and there's no notation as far as you can see, and maybe you can tell me was there any notation that you were alerted at any time that the bankruptcy case had been reinstated or that dismissal was vacated at that time?
> **Answer:** No, we were not informed of that.

Tr. 142:13-144:6.

As Brown's testimony shows, Nationstar tried to get into contact with the Plaintiffs and the Plaintiffs' counsel, but the Plaintiffs' counsel did not respond. As a result, Nationstar had no new information about the bankruptcy. Elizabeth Akintimoye ("Ms. Akintimoye"), the wife of the Plaintiffs' counsel who assisted Plaintiffs' counsel in mailing and filing documents, confirmed that she never mailed to Nationstar any notice stating that the bankruptcy case had been reinstated:

> **Question by Defendant's Counsel:** Okay. So at this point, you have no knowledge that any notice was provided to Nationstar that the case had been reinstated after it was dismissed or that the order dismissing the case was vacated, correct?
> **Answer:** If it is - if it is - if it is listed with the ones that I have here, the document is - all that is - bar dates for final approval claim in an individual Chapter 11 case and there's another one, the notice of hearing for confirmation of Debtor's Chapter 11 plan of reorganization, those ones I didn't put them in an envelope. I just mail it.
> **Question:** Okay. Those ones are the only ones that you would say you mailed directly to Nationstar?
> **Answer:** Yes.

Tr. 95:5-18.

The testimony of both Brown and Ms. Akintimoye demonstrates that Nationstar never received notice that the bankruptcy case was reinstated. Both Janet and Ms. Akintimoye confirm that neither of them mailed the notice of reinstatement to Nationstar, and Brown confirmed that Nationstar had no record of the case being reinstated.

### B. Nationstar Was Entitled to Receive Notice of the Plan and Plan Documents

Next, in addition to Nationstar not having received notice of the reinstatement of the case, it also did not receive notice of the Plan or Plan documents. Furthermore, Nationstar was entitled to said notice. On this matter, the Ninth Circuit Bankruptcy Appellate Panel has opined:

> A fundamental right guaranteed by the Constitution is the opportunity to be heard when a property interest is at stake. Specifically, the (chapter 11) reorganization process depends upon all creditors and interested parties being properly notified of all vital steps in the proceeding so they may have the opportunity to protect their interests.

*In re Mack*, No. ADV.RS 06-1160-DN, 2007 WL 7545163, at *5 (9th Cir. BAP 2007) (quoting *Reliable Elec. Co., Inc. v. Olson Const. Co.*, 726 F.2d 620, 623 (10th Cir. 1984)).

      Furthermore, "[a] creditor who is aware that a bankruptcy petition has been filed is not necessarily put on inquiry notice about every matter brought before the court ... [and] should be able to assume that he will 'receive all of the notices required by statute before his claim is forever barred.'" *Id.* (quoting *Fireman's Fund Mortg. Corp. v. Hobdy (In re Hobdy)*, 130 B.R. 318, 320-21 (9th Cir. BAP 1991)). While there is some dispute over whether the Plaintiffs knew that Nationstar was both the servicer and the lender, the Plaintiffs were, at a minimum, aware that Nationstar was the servicer. *See* Tr. 31:21-23. Furthermore, following the loan modification executed in November of 2013, Sergio Miranda confirmed that he made his mortgage payments directly to Nationstar:

> **Question by Defendant's Counsel:** You testified that you paid your loan pursuant to the terms of the loan modification, directly to Nationstar after the loan modification was executed?
> **Answer:** Yes.

Tr. 62:17-20.

      Because the Plaintiffs were making payments directly to Nationstar and Nationstar thus had a pecuniary interest, it is evident that at the time the chapter 11 documents were filed, Nationstar was an "interested part[y]" and, according to the Ninth Circuit Bankruptcy Appellate Panel, entitled to service.

    **C.**  <u>**Nationstar Did Not Receive Notice of the Chapter 11 Plan or Plan Documents**</u>

      The primary issue at the Evidentiary Hearing was whether Nationstar received notice of the Debtor's Plan and Plan Documents sufficient to bind its successor-in-interest, Shellpoint, to the terms of the Plan. The Plaintiffs presented two witnesses, Janet and Ms. Akintimoye – both of whom are interested parties who provided conflicting and dubious testimony. As initially discussed above, Janet claims that she helped to mail certain notices and papers to Nationstar. For example, Janet asserted that she mailed a copy of the *Order Setting Bar Date for Filing Proof of Claim in an Individual Chapter 11 Case* to Nationstar in November of 2013:

> **Question by Plaintiff's Counsel:** Can you identify that document for the record?
> **Answer:** Yes.
> **Question:** What is the caption?
> **Answer:** "Order setting bar date for filing proof of claim in an individual Chapter 11 case."
> **Question:** Have you seen that document before?
> **Answer:** Yes.
> **Question:** When was the first time you saw it?
> **Answer:** Three days after it was filed.
> **Question:** Okay. And, for the record, it was filed November 22nd, 2013, is that correct?
> **Answer:** Yes, that's correct.
> **Question:** Okay. Did you receive a copy of that document?

> **Answer:** Yes.
> **Question:** And when did you receive it?
> **Answer:** I received it by either email –
> **Question:** That's not my question. When did you receive it?
> **Answer:** A few days after it was filed.
> **Question:** Okay. And what did you do with the document?
> **Answer:** I got a copy of that document and also sent a copy to Nationstar.
> **Question:** Okay. Now, I want you to elaborate on how you sent it to Nationstar.
> **Answer:** So I sent it in first class mail. So I grabbed a copy of the document and put it in an envelope and with the necessary stamps required to send.

Tr. 14:19-15:19.

Janet further asserted that she mailed the Notice of Claims Deadline to All Creditors, the Debtor's Chapter 11 Plan, the Debtor's Disclosure Statement, the Ballot for Accepting or Rejecting the Plan, the Notice of Hearing on Confirmation of Debtor's Chapter 11 Plan, and Order Confirming Debtor's Chapter 11 plan to Nationstar via U.S. Mail. *See* Tr. 16:12-20:8 & 23:5-26:25. Upon cross examination, Janet asserted that she only provided notice of the above-mentioned documents to Nationstar and to no other creditors. Tr. 36:15-17. In addition, Janet testified that she had no records that support her contention that she mailed any documents to Nationstar:

> **Question by Defendant's Counsel:** And you didn't keep copies of what was actually sent, correct, to Nationstar by you?
> **Answer:** Yes – oh, I had a copy. So I made copies of what I had.
> **Question:** Okay. Did you – did you include a scanned receipt of what you mailed? Did you retain copies of that? Did you record what documents were mailed in some sort of log?
> **Answer:** No. . . .
> **Question**: And so I could go through the list. I'm - I'm just curious if you could just confirm maybe did you retain or record any records that support that notices were transmitted to Nationstar on or around the dates those notices were filed with the Court?
> **Answer:** No.

Tr. 41:13-20 & 42:1-6.

Janet provides no explanation as to why she mailed all of the requisite documents to Nationstar, but no other creditor in her parents' case. Nor did Janet provide any plausible explanation as to why it was she who was responsible for mailing documents to Nationstar, even though Plaintiffs' counsel was responsible for providing notice to all creditors other than Nationstar. In addition, Janet waivers between having a crystal-clear memory of mailing the documents to Nationstar, and having a hard time remembering anything because seven to eight years ago was "so long ago." Tr. 39:2. Another example of Janet's selective memory is the following:

> **Question by Defendant's Counsel:** Okay. And, as you mentioned, I'm sure, although you're definitely trying to recall accurately what was mailed and when it

>was mailed, and in fairness, you have stated seven to eight years ago that this is difficult to recall, correct?
>**Answer:** Yes.
>**Question:** Yes. Okay. So it's difficult to confirm exactly what was mailed and when it was mailed, correct?
>**Answer:** No.

Tr. 40:15-23.

The Court fails to understand how Janet both can and cannot remember which documents were mailed to Nationstar. Her contradictory testimony lacks credibility.

Finally, the Plaintiffs presented the testimony of Ms. Akintimoye wherein she asserts that she personally mailed certain documents to Nationstar:

>**Question by Plaintiffs' Counsel:** Okay. This particular document, Exhibit 3, the order setting bar date for filing proofs of claim, did I give you a copy of that document?
>**Answer:** Yes.
>**Question:** Did you mail that document out?
>**Answer:** I did.
>**Question:** Who did you mail it to?
>**Answer:** I mailed it to Nationstar Mortgage and –
>**Question:** Wait, wait. Let me ask you question before you answer. When did you mail that document to Nationstar?
>**Answer:** Nationstar, it was mailed –
>**Question:** Was it the same day you got the document or –
>**Answer:** The following day. The following day.
>**Question:** Okay. Did you mail it to the address at 350 Highland Drive Lewisville, Texas 75067?
>**Answer:** Yes.
>**Question:** Okay. So how did you mail the document to Nationstar?
>**Answer:** I mailed the document. I dropped the envelope at the post office with an envelope, and I address the office -- put the office address on the left-hand side.
>**Question:** Okay. Did you also affix sufficient stamp -- postage stamp on the envelope before you dropped it in the mail?
>**Answer:** Correct.
>**Question:** Is that a yes?
>**Answer:** Yes.

Tr. 74:22-75:21.

Ms. Akintimoye further states that, similar to Janet's testimony, she mailed the Notice of Claims Deadline to All Creditors, the Debtor's Chapter 11 Plan, the Debtor's Disclosure Statement, the Ballot for Accepting or Rejecting the Plan, the Notice of Hearing on Confirmation of Debtor's Chapter 11 Plan, and Order Confirming Debtor's Chapter 11 plan to Nationstar via U.S. Mail. *See* Tr. 73-84. Moments, later Ms. Akintimoye changes her mind and testifies that she cannot recall which documents she mailed to Nationstar:

> **Question by Defendant's Counsel:** You earlier stated that you reviewed the file and were familiar with the information contained, is that correct?
> **Answer:** I review the file. The documents that I mail, I make sure I get them together to mail. But specifically, the document you are talking about, I am not – I can't recall, but definitely if it is included, then it would be in the file. For every file I mail, I usually write – I note it on the client's file. But I cannot recall – I cannot recall the last documents you're talking about.

Tr. 103:22-104:5.

Next, when asked by Plaintiffs' counsel whether she was involved in mailing the Plaintiffs' documents to other creditors, she responds "no." Tr. 88:1-3. Moments later, however, Ms. Akintimoye gave the opposite response to the same question when it was posed by Defendant's counsel:

> **Question by Defendant's Counsel:** Right. But its fair to say that some of the service of the documents in this case would have been mailed out by you?
> **Answer:** Yes.
> **Question:** Including notices to creditors other than Nationstar?
> **Answer:** Yes.

Tr. 93:7-15.

Furthermore, when asked about whether she had any proof of mailing any documents, Ms. Akintimoye could offer none:

> **Question by Defendant's Counsel:** You testified that you mailed a lot of documents in this case.
> **Answer:** Yes.
> **Question:** Is it fair to say that you would not recall each mailing without having some sort of record or proof that a mailing occurred?
> **Answer:** When I do the mailing, because it's first class, one should be sure that definitely that mail will get there.
> **Question:** But you don't – you do not have anything that would refresh or recall your memory to refer to?
> **Answer:** No.
> **Question:** And, in fairness, it's challenging to actually remember specific documents that were mailed and when they were mailed since it was seven to eight years ago and you have no specific documentation to refer to? That's fair, correct?
> **Answer:** It all – it all depends because – the names on – on the envelope, one can't recall. But definitely when we do the mailing, we do first class. We should be sure that the mail -- the mail should get to the person and it should be safe.

Tr. 107:24-108:18.

The absence of any record of notice to Nationstar is particularly striking given that Ms. Akintimoye testified that it was her firm's regular practice to both maintain records of all mailings and to file proofs of service listing all creditors who received notice:

> **Question by Defendant's Counsel:** Based on your understanding -- or based on what you know, you are aware of the fact that most filings are filed with a proof of service that documents who was served that document, correct?
> **Answer:** Yes.
> **Question:** Okay. And that's a standard way to operate in a law firm, to file proof that something has been served on a creditor in a bankruptcy proceeding, correct? I'm assuming - what I meant by that, I guess, is it's standard practice of the law office to file proof of services to certify that somebody has been served notice in a bankruptcy proceeding, is that right?
> **Answer:** Yes.
> **Question:** Okay. And it's your understanding at least it's the standard practice of the law firm that you've been working at for several years that all the parties that are served would be listed on that proof of service, correct?
> **Answer:** Yes.
> **Question:** Okay. And it's also, I would say, fair to say that notices that are remitted to creditors are typically memorialized in some way within the business records of the law firm, is that right?
> **Answer:** Yes.

Tr. 90:16-91:13.

It is also the regular business practice of the firm for Ms. Akintimoye to make a notation in the client's file when she mails something. *See* Tr. 104:3-5 ("For every file I mail, I usually write - I note it on the client's file."). At the Evidentiary Hearing, there was some confusion as to exactly what "file" Ms. Akintimoye was referring to. She clarified that there is a digital file and a physical file. Ms. Akintimoye then further clarified that any annotations about mailing would be in the physical file and not the digital file:

> **Question by the Court:** Would the physical file have notations that would not be in the computer file?
> **Answer:** Definitely.
> **Court:** Okay.
> **Answer:** Like some of the notes that we make, we can't put them in the computer.
> **Court:** I understand.
> **Answer:** Not in 2013, no.
> **Court:** Right. Now, as far as the physical file, not the computer file but the physical file, where is that today?
> **Answer:** It's in the office, yes.
> **Court:** It's in the office. All right.
> **Answer:** Yes.
> **Court:** And that would have the notations that you were talking about, about when you sent things to Nationstar?
> **Answer:** Yes.

Tr. 106:1-18.

Curiously, however, Akintimoye did not review the physical file (which would theoretically contain key information about mailings), and the physical file is not in evidence:

> **Question by Defendant's Counsel:** Okay. So you did not review the physical file, though. You only reviewed the file on the computer?
> **Answer:** Yes.
> **Question:** So you cannot confirm that you notated the file with when these documents were served, correct? You did not review the file – the physical file?
> **Answer:** I think I noted the – that would be years back. So I don't –
> **Question:** But you don't – so you cannot confirm because you didn't review the physical file that you notated it?
> **Answer:** Yes.

Tr. 106:22-107:7.

The fact that the physical file is not in evidence, and that Ms. Akintimoye did not even review the physical file prior to the hearing, severely undercuts her assertion that the file contains annotations indicating service upon Nationstar.

In contrast to Ms. Akintimoye's and Janet's contradictory testimony, the Defendant presented two highly credible witnesses: Brown and Kenneth Davis ("Davis"). Davis is a bankruptcy case manager at Shellpoint. Davis stated that Exhibit A is a "complete list of all of our documents within our system" related to the Plaintiffs' mortgage. Tr. 121:5-6. Shellpoint acquired the loan from Nationstar on November 1, 2018. Tr. 123:2. Shellpoint received many of the documents on the list from Nationstar after Shellpoint acquired the loan, including the 341(a) notice, the chapter 11 ballot/plan, the Plaintiffs' petition, and the chapter 11 confirmation order. *See* Ex. A at 4-5. Davis then confirmed that the document list was a record kept in the ordinary course of business:

> **Question by Defendant's Counsel:** All right. Is this document list made and kept within the ordinary and regular course of business?
> **Answer:** Yes.
> **Question:** Are these records made at or near the time that the documents would be received?
> **Answer:** Yes.
> **Question:** Are these records made by a person with personal knowledge of the information and would record this knowledge in the ordinary course of business?
> **Answer:** Yes.
> **Question:** Is it regular practice to make and maintain these records for Shellpoint?
> **Answer:** It is, yes.

Tr. 122:1-13.

Davis then stated that, in reviewing Shellpoint's document list, he could see that Nationstar never timely received notice of the reinstatement of the Plaintiffs' bankruptcy or any of the Plan and Plan Documents because all of the bankruptcy documents Nationstar received were dated "November 12, 2018" or "November 29, 2018," well after the plan had already been confirmed. Tr. 130:11-131:2; *see also* Ex. A at 4-5. Finally, Davis confirmed that Shellpoint's

records are accurate because it is "[b]oth the routine practice of Shellpoint Mortgage to rely on these business records and to depend on what they included in the business records." Tr. 134:22-25.

Brown testified that the Communications Record (Ex. H) indicates that Nationstar was alerted to the Plaintiffs' bankruptcy on May 8, 2013. The Communications Record is a record that "tracks outgoing and incoming correspondence such as written correspondence or verbal communications with customers or the customer's authorized third parties." Tr. 141:6-9. The records are made as an ordinary course of business dealing, at the time they take place, and made by individuals who have personal knowledge of the information recorded. Tr. 141:11-21. Brown then testified that Nationstar's standard business practice with respect to bankruptcy cases demonstrated, that Nationstar was not notified that the bankruptcy case had been reinstated:

> **Question by Defendant's Counsel:** . . . Is it standard operating procedure for Nationstar to mail out a letter acknowledging a bankruptcy once they receive notice of a bankruptcy filing?
> **Answer:** Yes, definitely.
> **Question:** Okay. And then once the case is dismissed, is it standard operating [procedure] to then, as you've mentioned, revert it back to its pre-bankruptcy status?
> **Answer:** That is correct, yes.
> **Question:** Okay. Was there any record in your review that Nationstar ever received notice that this bankruptcy dismissal was vacated or the case was reinstated at any time?
> **Answer:** No, not until after the lawsuit was filed in I believe the summer of 2017.

Tr. 142:5-18.

Brown testified that the only information in the Communications Record regarding the bankruptcy letter were notations indicating that (1) a welcome letter had been mailed to Plaintiffs and that (2) a chain of title had been run. *See* Communications Record (5/9/13 Entry & 5/14/13 Entry). The Communications Record does not indicate that Nationstar received notice that the bankruptcy was dismissed *or* reinstated. However, the Communications Record does indicate that after receiving notice of the bankruptcy, Nationstar made numerous attempts to contact Mr. Akintimoye and the Plaintiffs. Nationstar made "several attempts to contact [the Plaintiffs], and on one occasion we were asked to call back at a later date, and all the correspondence with them was really unsuccessful with respect to finding anything out about an active bankruptcy." Tr. 142:25-143:4. In addition, the Communications Record indicates, and Brown testified, that Nationstar made multiple calls to Mr. Akintimoye's office "unsuccessfully," and on one occasion they got ahold of someone at Mr. Akintimoye's office "and whoever answered the phone at that time requested that we call back Monday. And then we attempted to call that same number several days later, and the individual that was contacted in the office referenced that number appeared to be disconnected when they attempted to call that number." Tr. 143:19-24; *see also* Communications Record (7/26/13 Entry). Brown then testified that Nationstar did not receive the Plan or Plan Documents, and he corroborates his testimony by referencing the Communications Record, which indicates that Nationstar received no documents from the bankruptcy court, the Plaintiffs, or the Plaintiffs' counsel about the bankruptcy. Tr. 146:8-148:1.

Plaintiffs' counsel attempted to impeach Brown's testimony by emphasizing that the Communications Record does not contain an entry indicating that the bankruptcy case had been dismissed. *See generally* Tr. 159:8–160:14. Counsel's attempts at impeachment are unavailing, because Brown plausibly testified that the dismissal of the case was reflected in a different system:

> **Question by Plaintiffs' Counsel:** Is there any entry in Exhibit H that shows that the Debtors' bankruptcy had been dismissed?
> **Answer:** No, not in this particular printout, but in the system that this was generated from, there is a code change system that I went in to check, and that bankruptcy was removed, and then what I had to do was go through the Black Knight, which was formerly known as the LPS system, and that will have notations in there and the ACER and PACER reports to show the dismissal.

Tr. 159:8-16.

Brown also testified that, while the Communications Record contains all written and verbal communication, the dismissal of the bankruptcy "would not necessarily be on this report." Tr. 160:1-2. Finally, when questioned as to why Nationstar did not contact Mr. Akintimoye during the time of the loan modification in November of 2013, Brown states the following:

> We don't want to reach out to somebody that is not actively representing a borrower of ours. We – we don't want to take the chance of potentially exposing our borrower's personal account information to somebody that is no longer actively representing them . . . We wouldn't have sent anything to your attention because after June 13, 2013, when we were able to locate information that the bankruptcy had been dismissed, you would no longer, in our eyes, be representing the borrowers at that point. So we would no longer send you any information unless we received information in writing that you were their authorized attorney and to send correspondence to you, and we - we never received that.

Tr. 163:1-6 & 164:24-165-7.

Having observed the demeanor of Ms. Akintimoye, Janet, Davis, and Brown, the Court finds Ms. Akintimoye's and Janet's testimony to lack credibility and be internally contradictory. Janet provided no explanation for why she mailed the Plan and Plan Documents to Nationstar, but no other creditors. Janet also claims that she clearly remembers mailing the aforementioned documents, but then has trouble remembering things that happened at the same time because it was "so long ago." Tr. 39:2. Next, Ms. Akintimoye's testimony is even less credible due to how many times she changes her own story during the course of the Evidentiary Hearing. Ms. Akintimoye also has a crystal-clear memory of every document she mailed to Nationstar, but then just moments later cannot recall exactly which she mailed. She also told Mr. Akintimoye that she was not involved in mailing anything to other creditors in the Plaintiffs' case, but then tells the Defendant's counsel that she did in fact mail documents to other creditors. Finally, Ms. Akintimoye vehemently testified that there would be annotations in the physical file that she mailed the documents, but did not review the physical file (which is not in evidence), and finally changes her mind and says she cannot confirm that the physical file has any annotations.

In contrast, Brown's testimony is far more credible and less internally contradictory. Brown first discussed the standard operating procedures for Nationstar and then provided detail as to why Nationstar believed the bankruptcy had not been reinstated: there is no record of Nationstar ever receiving any bankruptcy documents after the initial notice, and Nationstar's internal recordkeeping service says that the case was dismissed. Therefore, once Mr. Akintimoye failed to return any of Nationstar's calls (and Nationstar had not received any bankruptcy documents), it believed that the Plaintiffs had exited bankruptcy. Finally, Brown credibly testified that Nationstar's internal system showed that the bankruptcy notations were removed after the Plaintiffs' case was initially dismissed and the notations then reverted back to a pre-bankruptcy notation system, proving once again that Nationstar did not have notice that the bankruptcy was reinstated. Finally, with respect to Davis' testimony, his case log indicates that there were only a handful of bankruptcy documents handed over from Nationstar, and those all occurred years after the Plan was confirmed.

### III. Conclusions of Law
#### A. There is No Conclusive Evidence that the Notices Were Mailed

Evidence of standard business practices may establish that notice has been mailed. In *Mahon v. Credit Bureau of Place Cty, Inc.,* the Ninth Circuit held that the defendant's standard business practice was to mail required notice via first class mail. 171 F.3d 1197, 1201 (9th Cir. 1999). There, the plaintiffs were unable to offer any evidence that the defendant did not abide by its standard business practice. "Placing letters in the mail may be proved by circumstantial evidence, including customary mailing practices used in the sender's business." *Turner v. Dep't of Educ. Haw.,* 855 F. Supp. 2d 1155, 1167 (D. Haw. 2012) (quoting *Custer v. Murphy Oil USA, Inc.*, 503 F.3d 415, 420 (5th Cir. 2007)). In *Turner*, the defendants submitted a case log maintained in the ordinary course of business that indicated that the right-to-sue letter in question was mailed to the plaintiff. *Id.* The court determined that the case log was sufficient evidence to prove that the notice was mailed.

Here, Ms. Akintimoye did not follow standard business practices. Ms. Akintimoye testified that the standard business practice for the firm was to make a notation on the physical file after she mailed a document. *See* Tr. 104:3-5 ("For every file I mail, I usually write - I note it on the client's file."). Furthermore, Ms. Akintimoye agreed that "notices that are remitted to creditors are typically memorialized in some way within the business records of the law firm." Tr. 91:10-12. When asked the location of the file, however, Ms. Akintimoye testified that she did not know where in the office it was, despite having made notations on it. *See* Tr. 112:13-15. In addition, Ms. Akintimoye testified that she did not review the physical file and could not confirm that any notations regarding confirmation of mailing that would be on the file. *See* Tr. 106:1-19. Unlike the defendant in *Turner* that explicitly submitted its case log to prove its standard business practices had been followed, the Plaintiffs have submitted no evidence of mailing other than the unconvincing testimony of Ms. Akintimoye and Janet. Plaintiffs have failed to produce any conclusive evidence that Plan and Plan Documents were mailed or that standard business practices were followed.

#### B. Evidence of Nonreceipt Rebuts Any Presumption that Notice was Provided

"Mail that is properly addressed, stamped and deposited into the mails is presumed to be received by the addressee." *In re Bucknum,* 951 F.2d 204, 207 (9th Cir. 1991) (quoting *In re Ricketts,* 80 B.R. 495, 497 (9th Cir. BAP 1987)). In addition, "a denial of receipt is insufficient to

rebut a presumption that proper notice was given . . . ." *In re Eagle Bus Mfg., Inc.,* 62 F.3d 730, 735 (5th Cir. 1995). However, the Ninth Circuit has held that the mailbox rule applies "unless the [opposing party] can produce probative evidence of non-receipt." *Schikore v. BankAmerica Supplemental Retirement Plan*, 269 F.3d 956, 964 (9th Cir. 2001). In *Schikore*, the court noted that "probative evidence of non-receipt" included "describ[ing] in detail its procedures for receiving, sorting, and distributing mail [and showing] that these procedures were properly followed at the time when the document in question might conceivably have been delivered by the postal service . . . ." *Id.* The Bankruptcy Appellate Panel for the Ninth Circuit has gone so far as to say "a statement of non-receipt is not a nullity, but does address the presumption, which then is weighed against the declaration of non-receipt together with any other evidence submitted." *In re Williams*, 185 B.R. 598, 600 (9th Cir. BAP 1995)

Here, the Defendant has produced sufficient evidence to rebut any presumption that the requisite documents were mailed. The Defendant presented the testimony of Brown who corroborated the business practices of Nationstar. The Communications Record is a business record that "tracks outgoing and incoming correspondence such as written correspondence or verbal communications with customers or the customer's authorized third parties." Tr. 141:6-9. Upon review of the Communications Record, there is no line signifying that Nationstar received any documents relating to the bankruptcy after May 13, 2013. Communications Record (5/13/13 Entry). Brown also testified that there was no notice in Nationstar's internal system of any bankruptcy event occurring after June 13, 2013. *See* Tr. 165:3-5. Furthermore, Davis corroborated the business practices of Shellpoint and stated there is no record of any of the requisite bankruptcy documents that were transferred to Shellpoint until *after* it acquired the loan from Nationstar, showing that Nationstar never had notice of the Plan or Plan Documents. Tr. 129:6-131:2. Following the reasoning of *Schikore*, all evidence points to Nationstar having followed standard business practices and therefore rebutting any presumption that the Plan or Plan Documents were properly sent. *See Schikore,* 269 F.3d at 964.

Because Nationstar did not receive notice of the Plan, Shellpoint cannot be bound by the Plan. *See M & I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.),* 217 B.R. 588, 590 (9th Cir. BAP 1998) ("As long as due process is complied with, a confirmed plan binds all entities that hold a claim or interest, even if they are not scheduled, have not filed a claim, have not received a distribution under the plan or are not permitted to retain an interest under such plan."). Because Shellpoint cannot be bound to by the terms of the Plan, it is entitled to entry of judgment in its favor with respect to Plaintiffs' claims for breach of contract and declaratory relief.

## IV. Conclusion

Based upon the foregoing, the Court finds that Nationstar, as the predecessor-in-interest of Shellpoint, did not receive notice of the requisite plan documents. Therefore, Shellpoint is not bound by the terms of the Plaintiffs' Chapter 11 Plan. The Court will enter judgment consistent with this Memorandum of Decision.

###

Date: August 24, 2021

Ernest M. Robles
United States Bankruptcy Judge